**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL BARTOLOTTA, individually and on behalf of all others similarly situated, | ) ) ) | |
| | ) | Case No. 16-cv-4137 |
| Plaintiff, | ) ) | |
| | ) | Judge Thomas M. Durkin |
| v. | ) ) | |
| DUNKIN' BRANDS GROUP, INC., a Massachusetts corporation, and ORLAND PARK DONUTS, INC. d/b/a DUNKIN' DONUTS STORE #339462, an Illinois corporation, | ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S COMBINED OPPOSITION TO DEFENDANTS ORLAND PARK
DONUTS, INC.'S AND DUNKIN' BRANDS GROUP, INC.'S RESPECTIVE
<u>MOTIONS TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT</u>**

Joseph J. Siprut
*jsiprut@siprut.com*
Todd L. McLawhorn
*tmclawhorn@siprut.com*
Richard S. Wilson
*rwilson@siprut.com*
**SIPRUT** PC
17 North State Street
Suite 1600
Chicago, Illinois 60602
Phone: 312.236.0000
Fax: 312.878.1342

*Counsel for Plaintiff and
the Proposed Putative Class*

## **Table Of Contents**

Introduction ................................................................................................................1

Background ................................................................................................................1

Argument ..................................................................................................................3

      I.      Plaintiff states a viable claim that Orland Park Donuts is violating
the ICFA by charging the high tax rate on sales of packaged coffee ....................3

      II.     Orland Park Donut's motion for summary judgment is premature ........................9

      III.    Plaintiff states a valid ICFA claim against Dunkin' Brands ................................11

      IV.    Plaintiff states valid claims for negligent
misrepresentation against both Orland Park Donuts and Dunkin' Brands ............16

            A.     The *Moorman* doctrine does not apply
because Defendants' duty is extracontractual ...........................................16

            B.     Plaintiff sets forth the duty element
of a negligent misrepresentation claim. ....................................................19

Conclusion ..............................................................................................................19

**Table Of Authorities**

**United States Court Of Appeals Cases**

*Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs. Inc.*,
536 F.3d 663 (7th Cir. 2008) ................................................................. 14, 15

**United States District Court Cases**

*Gen. Elec. Bus. Fin. Servs., Inc. v. Galbut*,
No. 10 C 5010, 2011 WL 5373990 (N.D. Ill. Nov. 2, 2011) ....................................... 10

*Nixon v. U.S.*,
916 F. Supp. 2d 855 (N.D. Ill. 2013) .................................................. 16, 18

*OneBeacon Ins. Co. v. U.S. Foods, Inc.*,
304 F.R.D. 536 (N.D. Ill. 2014) ......................................................... 10

*Prmconnect, Inc. v. Drumm*,
No. 15-cv-417, 2016 WL 3014814 (N.D. Ill. May 26, 2016) ........................................ 16

*Selective Ins. Co. of the Se. v. Homeworks Cent., Inc.*,
No. 4:12-cv-4017-SLD-JAG, 2013 WL 1286982 (C.D. Ill. Mar. 26, 2013) ................... 16, 18, 19

**State Supreme Court Cases**

*2314 Lincoln Park West Condo. Assoc. v. Mann, Gin, Ebel & Frazier, Ltd.*,
555 N.E.2d 346, 136 Ill. 2d 302 (Ill. 1990) ............................................... 17

*Anderson Elec. v. Ledbetter Erection Corp.*,
503 N.E.2d 246, 115 Ill. 2d 146 (Ill. 1986) ............................................... 18

*Avery v. State Farm Mut. Auto. Ins. Co.*,
835 N.E.2d 801, 216 Ill. 2d 100 (Ill. 2005) ............................................... 14

*Canteen Corp. v. Dep't of Revenue*,
525 N.E.2d 73, 123 Ill. 2d 95 (Ill. 1988) ................................................. 6

*Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*,
636 N.E.2d 503, 159 Ill. 2d 137 (Ill. 1994) ............................................... 16

*Hadley v. Ill. Dep't of Corr.*,
864 N.E.2d 162, 224 Ill. 2d 365 (Ill. 2007) ............................................ 3, 6

*In re Country Mut. Ins. Co.*,
889 N.E.2d 209 (Ill. 2007) ............................................................... 16

*Kean v. Wal-Mart Stores, Inc.*,
919 N.E.2d 926, 235 Ill. 2d 351 (Ill. 2009) ........................................................... 4, 6, 8

*Knolls Condo. Ass'n v. Hams*,
781 N.E.2d 261, 202 Ill. 2d 450 (Ill. 2002) ............................................................... 8

*Moorman Mfg. Co. v. Nat'l Tank Co.*,
435 N.E.2d 443, 91 Ill. 2d 69 (Ill. 1982) .................................................................. 16

*Robinson v. Toyota Motor Credit Corp.*,
775 N.E.2d 951, 201 Ill. 2d 403 (Ill. 2002) ............................................................. 15

**State Court Of Appeals Cases**

*Brown v. Zehnder*,
693 N.E.2d 1255 295 Ill. App. 3d 1031 (Ill. App. Ct. 1998) ....................................... 4

*Country Mut. Inc. Co. v. Carr*,
852 N.E.2d 907, 366 Ill. App. 3d 758 (Ill. App. Ct. 2006) .................................... 16, 18

*Golf v. Henderson*,
876 N.E.2d 105, 376 Ill. App. 3d 271 (Ill. App. Ct. 2007) ........................................ 18

*Hoover v. Country Mut. Ins. Co.*,
975 N.E.2d 638, 2012 IL App (1st) 110939 (Ill. App. Ct. 2012) ................................ 19

*Ill. Bell. Tel. Co. v. Plote, Inc.*,
778 N.E.2d 1203, 334 Ill. App. 3d 796 (Ill. App. Ct. 2002) .................................. 17, 18

*People ex rel. Hartigan v. Stianos*,
475 N.E.2d 1024 131 Ill. App. 3d 575 (Ill. App. Ct. 1985) .............................. 4, 11, 15

*Tolan and Son, Inc. v. KLLM Architects, Inc.*,
719 N.E.2d 288, 308 Ill. App. 3d 18, (Ill. App. Ct. 1999) ......................................... 18

**State Statutes & Rules**

35 ILL. COMP. STAT. 105/3-10 ......................................................................... *passim*

35 ILL. COMP. STAT. 120/2-10 ......................................................................... 4, 5, 18

815 ILL. COMP. STAT. 505/1 ..................................................................................... 1

ILL. ADMIN. CODE 86 § 130.310 ...................................................................... 5, 7, 10

**Introduction**

Illinois law provides for a general tax rate of 6.25% on sales of tangible personal property, with various exceptions. One such exception is that the statute provides that "[w]ith respect to food for human consumption that is to be consumed off the premises where it is sold", the tax is 1% rather than 6.25%. 35 ILL. COMP. STAT. 105/3-10. Packaged coffee, *i.e.*, bulk coffee beans and grounds, obviously can only be consumed off the premises, and thus should be taxed at the lower 1% rate. But Dunkin' Donuts branded stores—unlike their competitors, such as Starbucks—do not charge tax on packaged coffee at the low 1% rate, but instead charge customers the high 6.25% rate, which has the effect of adding approximately 35 to 50 cents on every one pound bag of coffee sold by Dunkin' Donuts franchisees in Illinois. Plaintiff seeks to stop this practice going forward, and to recoup actual damages for himself and the putative class. Plaintiff brings claims for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILL. COMP. STAT. 505/1 *et seq.* ("ICFA"), and negligent misrepresentation.

**Background**

Dunkin' Brands Group, Inc. ("Dunkin'") is an international restaurant business that offers for sale coffee, doughnuts, and other baked goods. Dunkin' Donuts has approximately 591 stores in Illinois. (Compl. ¶¶1-2.) Orland Park Donuts, Inc. d/b/a Dunkin' Store #339462 ("Orland"), is subject to detailed control by Dunkin' and operates a Dunkin' Donuts franchise in Orland Park, Illinois. (*Id.* ¶¶13-14.)

On March 12, 2016, Plaintiff purchased a one-pound bag of Dunkin' Donuts' coffee beans from Orland. (*Id.* ¶¶35-36.) The subtotal for the purchase was $8.99. The tax charged was $0.88. A tax charge of $0.88 on a purchase of $8.99 equates to a 9.75% tax rate. (*Id.* ¶¶37-38, 44.) According to the Illinois Department of Revenue, in Orland Park, Cook County, Illinois, the "high

rate" in March 2016 was 9.75%, which consisted of the: (a) 6.25% State-rate; (b) 1.75% "County Home Rule" surcharge; (c) 0.75% "Home Rule" surcharge; and (d) 1.00% "Regional Transportation Authority" surcharge. (*Id.* ¶43.) Thus, Plaintiff was charged sales tax at the "high rate" instead of the "low rate."

Orland is not the only Dunkin' Donuts franchisee who charges sales tax at the high rate on packaged coffee. For example, in April 2016, Dunkin' Donuts store #344543, located at 105 W. Madison Avenue, Chicago, Illinois, charged $1.15 in sales tax on a purchase of a $9.99 one-pound bag of coffee beans. That amount of sales tax reflects a rate of 11.50%. (*Id.* ¶53.) Similarly, in April 2016, Dunkin' Donuts store #335720, located at 6 N. Wabash Avenue, Chicago, Illinois, charged $1.15 in sales tax on a purchase of a $9.99 one-pound bag of coffee beans. That amount of sales tax reflects a rate of 11.50%. (*Id.* ¶55.) And, in April 2016, Dunkin' Donuts store #352146, located at 10 W. Chicago Avenue, Chicago, Illinois, charged $1.15 in sales tax on a purchase of a $9.99 one-pound bag of coffee beans. That amount of sales tax reflects a rate of 11.50%. (*Id.* ¶57.)

In fact, although Plaintiff has yet to have the benefit of discovery in this case, Plaintiff's investigation thus far has revealed **all** Dunkin' Donuts stores charge the high tax rate on packaged coffee. For example, Plaintiff's investigator purchased a one-pound bag of packaged coffee grounds from twenty different Dunkin' Donuts stores in the Chicagoland area. (Pltf. Rule 56.1 Statement ¶2.) Each of the twenty Dunkin' stores charged sales tax at the high rate. (*Id.*) Plaintiff's investigator also purchased a one-pound bag of packaged coffee grounds from the Dunkin' Donuts on-line store; that purchase was also taxed at the high rate. (*Id.* ¶3.) Conversely, it appears **none** of Dunkin Donuts' primary competitors is charging the high rate for packaged coffee, but instead each is charging the low rate. Plaintiff's investigator purchased a one-pound bag of packaged coffee grounds from ten different Starbuck's stores in the Chicagoland area. Each of the ten

Starbuck stores charged sales tax at the low rate. (*Id*. ¶4.) Plaintiff's investigator also purchased packaged coffee from several other coffee shops not affiliated with either Starbucks or Dunkin' Donuts, including Peet's Coffee & Tea and Intelligentsia; with one possible exception those stores applied the low rate of tax. (*Id.* ¶5.) The only common link among the coffee shops that are charging the high rate for packaged coffee is that they are Dunkin' Donuts' franchisees. (*Id*. ¶6.)

<u>Argument</u>

I.    **Plaintiff states a viable claim that Orland Park Donuts is violating the ICFA by charging the high tax rate on sales of packaged coffee.**

Illinois law on taxation on this issue is not nearly as complicated as portrayed by Orland in its motion. It is axiomatic that in all cases of statutory construction, the courts look first to the language of the statute, which must be given its plain and ordinary meaning. *Hadley v. Ill. Dep't of Corr.*, 864 N.E.2d 162, 165, 224 Ill. 2d 365, 370 (Ill. 2007). "Where the statutory language is clear, it will be given effect without resort to other aids of construction." *Id.* And while courts will defer to an agency interpretation of any statutory ambiguities, the courts do not accept agency determinations that conflict with the statute, are unreasonable, or otherwise erroneous. *Id.*

The Illinois statute concerning the tax rate, 35 Ill. Comp. Stat. 105/3-10, is straightforward. The statute first provides a general 6.25% tax rate on sales of personal property: "Unless otherwise provided in this Section, the tax imposed by this Act is at the rate of 6.25% of either the selling price or the fair market value, if any, of the tangible personal property." The statute then provides an exception for food that is to be consumed off the premises, and imposes a lower 1% rate:

> **With respect to food for human consumption that is to be consumed off the premises where it is sold** (other than alcoholic beverages, soft drinks, and food that has been prepared for immediate consumption) and prescription and nonprescription medicines, drugs, medical appliances, modifications to a motor vehicle for the purpose of rendering it usable by a person with a disability, and

insulin, urine testing materials, syringes, and needles used by diabetics, for human use, **the tax is imposed at the rate of 1%**.

*Id.* (emphasis added). The companion statute, 35 ILL. COMP. STAT. 120/2-10, which is the retailers' occupation tax, contains the same language and has the same rate structure.[1] In other words, food purchased to be eaten on the spot, such as in a restaurant or deli, is taxed at a state rate of 6.25%, and food purchased to be taken home, such as in a grocery store, is taxed at a state rate of 1.00%.

Plaintiff purchased a one-pound bag of coffee grounds from Orland. By its very nature, a bag of coffee grounds cannot be consumed on the premises because the customer first needs to brew the coffee, and, in some cases, further grind the coffee. (And no one could consume an entire pound of coffee at one sitting anyway.) Based on the Illinois statute, Plaintiff should have been charged the low rate, which would consist of the 1% rate pursuant to 35 ILL. COMP. STAT. 105/3-10. Instead, Plaintiff was charged the high rate of 6.25%, along with some other local taxes not at issue here. This is a violation of the ICFA. *See People ex rel. Hartigan v. Stianos*, 475 N.E.2d 1024, 1029, 131 Ill. App. 3d 575, 581 (Ill. App. Ct. 1985) (holding the practice of charging consumers sales tax in excess of the amount authorized by law was both deceptive and unfair under the ICFA).

Lest there be any doubt about the proper tax rate for bulk coffee, the Department of Revenue provides regulations that specifically reference coffee shops. Those regulations specifically state: "Bulk coffees (beans or grounds, for instance) and teas, or pastries that are not consumed on the premises, are subject to the low rate of tax." ILL. ADMIN. CODE 86 §

---

[1] Under the Illinois statutory scheme, the Use Tax Act ("UTA") taxes the selling price of the property (which the customer pays to the retailer), and the Retailers' Occupation Tax ("ROTA") taxes the gross receipts from the sales of the property (which the retailer pays to the state). *See Kean v. Wal-Mart Stores, Inc.,* 919 N.E.2d 926, 932-33, 235 Ill. 2d 351, 362-63 (Ill. 2009); *Brown v. Zehnder*, 693 N.E.2d 1255, 1258-59, 295 Ill. App. 3d 1031, 1034 (Ill. App. Ct. 1998). Only one tax is remitted to the state, and the single payment satisfies both taxes. *Id.*

130.310(d)(4)(I). That would seem to be the end of the matter.

In an attempt to avoid this clear and specific language, Orland refers to the general scheme set forth earlier in the same regulations concerning the two-part test in Section 130.310(d) to help determine if food is prepared for immediate consumption or for consumption off the premises. Section 130.310(d) creates a rebuttable presumption that all food sales are taxable at the high rate as food prepared for immediate consumption if the retailer provides seating or facilities for on-premises consumption of food. The presumption can be rebutted if (1) the area for on-premises consumption is physically separated or otherwise distinguishable from the area where food not for immediate consumption is sold and (2) the retailer utilizes a means of recording and accounting for collection of receipts from the sales of food prepared for immediate consumption and those not prepared for immediate consumption. ILL. ADMIN. CODE 86 § 130.310(d). Orland claims it never challenged the rebuttable presumption created by this two-part test, and that, in any event, it would fail the two-part test because it does not have a physically separate area for on-premises consumption and does not maintain separate records for sales of different food items. (OPD Def. Mem. 6-7.) Thus, according to Orland, it did not seek, and could not have qualified under the regulations, to charge the low tax rate for food to be consumed off the premises. But the only way to reach that fact issue, at least with respect to bulk coffee, is through a tortured analysis of the regulations. Orland's interpretation is flawed for several reasons.

First, if Orland's reading of the regulation is correct, it contradicts the statute. The statute clearly states "food for human consumption that is to be consumed off the premises where it is sold" is to be taxed at 1%. 35 ILL. COMP. STAT. 105/3-10; 35 ILL. COMP. STAT. 120/2-10. It is uncontested that coffee beans and grounds can only be consumed off the premises where they are sold. The Department of Revenue's regulation cannot override the statutory language. *See, e.g.,*

*Kean*, 919 N.E.2d at 934, 235 Ill. 2d at 366 ("If, however, an administrative regulation is inconsistent with the statute under which it was adopted, the regulation will be held invalid."); *Hadley*, 864 N.E.2d at 173, 224 Ill. 2d at 385 ("Where an administrative rule conflicts with the statute under which it was adopted, the rule is invalid.")

Second, Orland's interpretation would create an anomaly in that the tax charged on packaged coffee could vary from store to store. The Illinois Supreme Court has previously found that taxing the same product differently based on the type of store is "unreasonable." *Canteen Corp. v. Dep't of Revenue*, 525 N.E.2d 73, 79, 123 Ill. 2d 95, 108 (Ill. 1988). In *Canteen Corp.*, a vending machine owner challenged the Department of Revenue's determination that all food items from vending machines were considered to be food prepared for immediate consumption. The vending machine owner submitted evidence of a set of items (a can of soda, a bag of potato chips, a bag of cookies, a candy bar, gum, microwave popcorn, a fruit drink, and some cupcakes) purchased from a 7-Eleven convenience store, and the identical set of items from plaintiff's warehouse installed in its vending machines, which were exhibits 12 and 13. The court found that some food sold in vending machines was not for immediate consumption, and thus should be taxed at the low rate. The court further noted:

> Moreover, the Department's construction of the phrase "prepared for immediate consumption" leads to the anomalous result so cogently demonstrated by plaintiff's exhibits 12 and 13; one set of products purchased from a convenience or grocery store would be taxed at the reduced rate while an identical set of food products prepared in the exact same manner would be taxed at the full rate. *Such a result is unreasonable.*

525 N.E.2d at 79, 123 Ill. 2d at 108 (emphasis added). The court rejected the Department of Revenue's interpretation that all foods from vending machines were for immediate consumption as contrary to the statute. *Id.*

Third, Orland's reading of the regulation depends upon the inclusion of the prefatory

language from the coffee shop subsection "Provided that the requirements of either subsection (d)(1) or (d)(2) are met . . . ." But that preface is not contained in the sentence that says "Bulk coffees (beans or grounds, for instance) and teas, or pastries that are not consumed on the premises, are subject to the low rate of tax." ILL. ADMIN. CODE 86 § 130.310(d)(4)(I). Rather, that preface is included only with the preceding sentence dealing with coffee, latte, cappuccino and tea, and has no application to bulk coffees. The sentence dealing with bulk coffee stands alone, and is unambiguous.

As a fallback, we suspect that Orland will argue the prefatory language that incorporates 130.310(d)(1) and (d)(2) is implicitly included because it is in the preceding sentence within subsection I, and should apply to the entirely of subsection I, which is limited to coffee shops. But that will not work here. A review of other sections of the regulations show that when prefatory language is used only in the first sentence of a specific section, it does **not** apply to subsequent sentences within the same section. For example, subsection H (130.310(d)(4)(H)), which concerns convenience stores, starts out with the same "Provided that the requirements of either subsection (d)(1) or (d)(2) are met" language as subsection I. But the third sentence of subsection H says "The sales of hot food items, such as hot dogs, nachos or pretzels, are subject to the high rate of tax, as well as other food sold for consumption on the premises." Thus, "hot" hot dogs are charged at the high rate no matter what, regardless of the requirements of subsection (d)(1) and (d)(2). Subsection D, which involves bakeries, works the same way; the prefatory language and the (d)(1) and (d)(2) requirements that are contained only in the first sentence apply only to the first sentence; food sold for consumption *on the premises*, such as doughnuts and coffee, are subject to the high rate of tax. ILL. ADMIN. CODE 86 § 130.310(d)(4)(D).

For the same reasons, it cannot be said that the 130.310(d)(1) and (d)(2) test must apply to

- 7 -

all the specific examples provided within subsection 130.310(d) (such as the coffee shop example in subsection (I)) merely because those examples are contained within yet another subsection of 130.310(d). If that were so, there would be no reason to ever use the prefatory (d)(1) and (d)(2) language in any of the examples. Yet, that language is included in *some* parts of *some* examples, and not in other parts. A statute or regulation should be construed, if possible, so that no word is rendered meaningless or superfluous. *Kean*, 919 N.E.2d at 936, 235 Ill. 2d at 368. Reading (d)(1) and (d)(2) as applying to all parts of every example within 130.310(d) (which would include the coffee shop example in subsection I) renders the prefatory language meaningless. On the other hand, Plaintiff's interpretation is simple: The language in subsection I means exactly what it says— bulk coffee is taxed at the low rate.

Orland also claims that the Food Flow Chart contained as Illustration C in Section 130.310 supports its claim that it must pay the high rate. But that interpretation of the general language in the flow chart concerning food (and the flow chart does not mention coffee at all) conflicts with the plain language in the specific example in subsection I that bulk coffee is subject to the low rate of tax. In such a case, as a matter of statutory construction, the specific language controls over the general language. *E.g.*, *Knolls Condo. Ass'n v. Hams*, 781 N.E.2d 261, 267, 202 Ill. 2d 450, 459 (Ill. 2002) ("It is also a fundamental rule of statutory construction that where there exists a general statutory provision and a specific statutory provision, either in the same or in another act, both relating to the same subject, the specific provision controls and should be applied.") In addition, Orland's interpretation would also put Illustration C in direct contravention of the statute, which says food to be consumed off the premises is subject to the low rate. *See Kean*, 919 N.E.2d at 938, 235 Ill. 2d at 372 ("Administrative regulations can neither expand nor limit the statute they

- 8 -

enforce.") [2]

Fourth, while not dispositive as a matter of statutory interpretation, it appears that none of Orland's competitors share its view of the proper tax rate. The *only* coffee shops we have found thus far that charge the high rate on packaged coffee are all Dunkin' Donuts franchisees. For example, Starbuck's stores, which appear to have the same physical features of a coffee shop as Dunkin' Donuts, charge the low rate for packaged coffee. (Pltf. Rule 56.1 Statement ¶4.) And other coffee shops do the same. (*Id.* ¶5.) Under Orland's interpretation, it (and presumably its fellow Dunkin' Donuts franchisees) is the only one interpreting the statute correctly, and everyone else is wrong.

The Illinois statute means what it says—food to be consumed off the premises is to be taxed at the low rate. Orland does not claim that bulk coffee beans and grounds could *ever* be consumed on the premises. Orland is violating the statute by charging the high rate, and that is both a deceptive and unfair practice under the ICFA.

## II.     Orland Park Donut's motion for summary judgment is premature.

In the alternative, Orland has moved for summary judgment. Such a motion is premature given that there has been *no* discovery in this case and Orland has not even answered the complaint. Federal Rule of Civil Procedure 56(d) specifically provides, among other things, that the Court may defer consideration of the motion, deny the motion or allow for discovery so that the

---

[2] Orland could be correct that all of its other food besides packaged coffee has to be charged at the high rate because of the manner in which it runs its business, because those foods are different from packaged coffee in that it is possible they could be consumed on the premises and there is not specific language saying those food items are to be taxed at the low rate. We take no position on that issue. It is Orland's interpretation of the regulations with respect to bulk coffee that creates the conflict with the statute and the internal inconsistencies within the regulations; those conflicts do not necessarily exist with respect to foods other than bulk coffee.

nonmovant may properly respond. The Court should deny Orland's attempt to bypass discovery. In particular, Orland relies upon the Affidavit of Aziz Nathani to support its motion. (Dkt. No. 24-2.) There are several problems with such reliance.

First, Nathani's affidavit simply parrots the administrative code sections of 130.310(d)(1) and (d)(2) upon which Orland bases its statutory argument. Comparing the affidavit to the relevant regulatory language makes this clear. For example:

- Mr. Nathani states: "Orland Park Donuts, Inc. is a retail coffee/donut shop that does not have any *area for on-premise consumption that is physically separated or otherwise distinguishable from the area where food not for immediate consumption is sold.* (Dkt. No. 24-2 at ¶3 (emphasis added).)

- Section 130.310(d)(1)(A) states: "*the area for on-premises consumption is physically separated or otherwise distinguishable from the area where food not for immediate consumption is sold*[.]" ILL. ADMIN. CODE 86 § 130.310(d)(1)(A) (emphasis added).

Such legal conclusions are improper. *E.g.*, *OneBeacon Ins. Co. v. U.S. Foods, Inc.*, 304 F.R.D. 536, 542 (N.D. Ill. 2014) ("An affidavit containing an affiant's opinions and legal conclusions are ineffectual and not given any consideration or weight on summary judgment"); *Gen. Elec. Bus. Fin. Servs., Inc. v. Galbut*, No. 10 C 5010, 2011 WL 5373990, at *6 (N.D. Ill. Nov. 2, 2011) (disregarding defendants' affidavit because "statements in an affidavit containing legal conclusions are inadmissible").

Second, Plaintiff is entitled to depose Nathani to test the statements he makes in his affidavit and to learn, for example, what Nathani means when he says Orland's cash/computer registers make no distinction between sales of different food items for tax purposes (Dkt. No. 24-2 at ¶5.)  That suggests that Orland applies the identical tax rate to every item it sells, but that is

- 10 -

not clear from the affidavit, and Nathani provides no support for such a broad statement. Interestingly, Nathani does not say that Orland charges the high rate on all food items, nor does Nathani claim that Orland is paying sales tax to the State of Illinois based on the high rate.[3]

Third, in the event the Court believes that the test in 130.310(d)(1) and (d)(2) has application to this case—and we believe it is irrelevant under the statutory analysis above—Plaintiff needs discovery into the facts of the Orland physical setup and its recording and collection of receipts in order to apply those facts to the test set forth in (d)(1) and (d)(2). It also appears from Plaintiff's investigation that Dunkin' Donuts franchisees are the *only* coffee shops charging the high rate for bulk coffee, which suggests there may be some other reason why Orland is charging the high rate. It would be an unlikely coincidence that all twenty-four Dunkin' Donuts franchisees that have been identified thus far each made the independent decision to charge the high rate, when all of their competitors reached the opposite conclusion.[4] In addition, Plaintiff is entitled to discover whether Orland is in fact interpreting the statute as it claims when it comes to remitting the revenues to Illinois; in the event Orland is not remitting sales taxes based on the high rate, that would eviscerate its argument that it is required to collect at the high rate.

Orland Park Donuts' motion should be denied.

### III.  Plaintiff states a valid ICFA claim against Dunkin' Brands.

For its separate motion, Dunkin' Brands incorporates the preceding arguments made by its

---

[3] Incidentally, that would not be a defense. "It is also unfair to permit the extraction from the consumer of excessive sums under the guise it is a lawful tax. If, as defendants alleged in their answer, the excess sums collected were turned over to the State, defendants' conduct remains unfair and deceptive to the consumers' injury." *Stianos*, 475 N.E.2d at 1029, 131 Ill. App. 3d at 581.

[4] Plaintiff pled that he paid the high rate on packaged coffee at Orland. (Compl. ¶¶35-46.) The complaint also identifies three other Dunkin' stores that charge the high rate. (*Id.* ¶¶53-58.) And Plaintiff's private investigator has identified another twenty Dunkin' stores that charge the high rate. (Pltf. Rule 56.1 Statement ¶2.)

Orland Park franchisee concerning the ICFA claim. (DB Def. Mem. 2 n.1.) Dunkin' also separately raises three interrelated arguments why Plaintiff's ICFA claim should be dismissed against it. Dunkin' first claims that it has no control over Orland and was not involved in pricing or the charging of sales tax, and that a newspaper article cited in the Complaint makes this so. Next, Dunkin' claims Plaintiff has not been specific enough about Dunkin's role in the underlying tax overcharge. Finally, Dunkin' claims Plaintiff has not pled the elements of ICFA sufficiently to provide Dunkin' with notice of the claims against it. None of those arguments has any merit.

First, Plaintiff alleges that Dunkin' exercises detailed control over its franchisees, including the fees and charges imposed on customer purchases of Dunkin' branded goods. (*E.g.*, Compl. ¶14.) Plaintiff alleges that Dunkin' controls the prices and taxes charged by Dunkin' franchisees through programs in the point-of-sale system. (*Id.* ¶28.) Plaintiff further alleges there have been reports of other Dunkin' franchisees in other states engaging in similar behavior, which supports the inference that Dunkin' is the common element in the taxes charged by its franchisees. (*Id.* ¶29.) And Plaintiff alleges that other Dunkin' franchisees in Illinois are charging the same high tax rate on packaged coffee as the Orland franchisee charged him. (*Id.* ¶¶52-59.)

In connection with reports about Dunkin's conduct in *other* states, Plaintiff cites the news article that Dunkin' claims contradicts Plaintiff's complaint. (DB Def. Mem. 3.) The article does not. The article is limited to New Jersey sales practices, New Jersey customers and New Jersey franchisees. If Dunkin' in fact controls the prices charged and sales tax collected by Dunkin' New Jersey franchisees, that would support the inference that Dunkin' similarly controls Illinois franchisees. But the converse is not true because the New Jersey franchisees could operate independently while the Illinois franchisees do not. In other words, if Dunkin' does not control and direct New Jersey franchisees, that does not prove that Dunkin' does not control Illinois

- 12 -

franchisees. There is no contradiction in Plaintiff's complaint.[5]

Second, Dunkin' claims Plaintiff's allegations are too conclusory at this stage. Dunkin' elevates form over substance. Dunkin's franchise agreements and operating documents are not publicly available, with the result that Plaintiff has to rely on common sense observations and counsel's investigation with respect to Dunkin's true role. Those observations point squarely to Dunkin'—franchisees have uniform appearances, common promotions, common advertising, common products, and common pricing. More significantly, besides the allegations that Dunkin' franchisees from other states appear to also be similarly overcharging tax for packaged coffee, Plaintiff alleges that other Dunkin' franchisees in other Illinois locations are also charging the high rate for packaged coffee. (Compl. ¶¶52-59.) The only common element in those situations is that Dunkin' is the franchisor; while that does not prove that Dunkin' is the proverbial man behind the curtain, it is certainly enough to support the allegation.

Plaintiff's continued investigation supports this. Dunkin' incorporated Orland's alternative motion for summary judgment in its motion. In response to Orland's motion, Plaintiff has provided additional evidence of Dunkin' franchisees' sales practices, and we now have identified twenty-four Dunkin' franchisees in Illinois charging the high rate of tax (*supra* p. 1-2). On the other hand, none of Dunkin's competitors, including its largest competitor, is doing so. Again, the common link is Dunkin', as the franchisor.

Third, in a variation on the first two arguments, Dunkin' claims that Plaintiff has not stated

---

[5] Curiously, while Dunkin' incorporates its Orland franchisee's alternative motion for summary judgment, thus crossing the line from pleadings to evidence, rather than submit anything that refutes Plaintiff's control allegations, Dunkin' instead quotes two statements from New Jersey *customers* in a 2013 news article to support its claimed noninvolvement. If Dunkin' were truly as uninvolved as it claims, it could simply submit whatever documents it provided to its Illinois franchisees to the effect that the franchisees had complete and total control over pricing and taxation and that Dunkin' disclaimed any role with that aspect of franchisee operations.

an ICFA claim because Plaintiff does not adequately allege that Dunkin' specifically sets the sales tax at issue and that lumping Orland and Dunkin' together "fails to put Dunkin' on notice of [Plaintiff's] claims, and therefore fails to satisfy this Court's notice-pleading standard." (DB Def. Mem. 7.) Dunkin' then goes on to argue the relevant pleading standard is Rule 9(b) for an ICFA claim. Dunkin' is only partially correct, as the first case it cites for that proposition makes clear. *See Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs. Inc.*, 536 F.3d 663, 667 (7th Cir. 2008). Rule 9(b) applies to an ICFA claim alleging deceptive conduct. *Id.* at 688. But Rule 8(a) applies to an ICFA claim alleging unfair conduct. *Id.* at 670. As Dunkin' correctly notes—indeed it emphasizes the point in its quotation from paragraph 72 of the Complaint— Plaintiff alleges both a deceptive *and* unfair practice under the ICFA. (DB Def. Mem. 6.) Plaintiff adequately states a claim for both.

To state an ICFA deceptive conduct claim, a plaintiff must allege: "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 850, 216 Ill. 2d 100, 180 (Ill. 2005). Plaintiff alleges that Dunkin' controls Orland's operations, that Orland charged Plaintiff sales tax that was more than permitted by law, that Dunkin' and Orland intended for Plaintiff to rely upon that conduct, and that Plaintiff paid more in tax than he would have absent the deception. (*E.g.*, Compl. ¶¶14, 25-29, 35-46, 51-52, 70-76.) Nothing more is required.

As for Dunkin's complaint that Plaintiff lumps Dunkin' and Orland together, to the extent Plaintiff does so, it is because Plaintiff alleges both entities are responsible for charging the inflated sales tax on packaged coffee, and that as franchisor and franchisee they worked together on this

facet of the business, as with any part of the business. Plaintiff's theory against both Defendants is the same—Dunkin' as franchisor and Orland as franchisee are charging customers the high rate of tax on packaged coffee, which is a deceptive practice. *See Stianos*, 475 N.E.2d at 1029, 131 Ill. App. 3d at 581 ("It is also unfair to permit the extraction from the consumer of excessive sums under the guise it is a lawful tax.") At this point, Plaintiff has no basis to differentiate between the roles of franchisor and franchisee, and there is no such pleading requirement. Obviously, should discovery reveal there are distinct differences between Dunkin' and Orland with respect to taxation, Plaintiff can amend his complaint if necessary.

Plaintiff also alleges the Defendants have engaged in unfair conduct under the ICFA. For conduct to be considered unfair, courts look to three factors: (1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers. *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961, 201 Ill. 2d 403, 417-18 (Ill. 2002). A plaintiff does not need to use the exact language in his complaint to describe the three factors listed above. *See Windy City Metal Fabricators*, 536 F.3d at 672 (holding that plaintiff adequately stated a claim for relief when complaint alleged conduct that could support the statutory definition of unfairness even if the complaint did not specifically use the words "immoral, unethical, oppressive, or unscrupulous"). The same facts that Plaintiff alleges in support of his claim of deception—Dunkin's franchisees are charging an inflated amount of tax for packaged coffee—offend public policy, could be considered oppressive and cause substantial monetary damage to consumers. That satisfies Rule 8(a)'s notice pleading requirement.

- 15 -

IV.     **Plaintiff states valid claims for negligent
        misrepresentation against both Orland Park Donuts and Dunkin' Brands.**

    A.     **The *Moorman* doctrine does not apply
        because Defendants' duty is extracontractual.**

Defendants contend that Plaintiff's negligent misrepresentation claim is barred by Illinois'
economic loss doctrine under *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 91 Ill. 2d 69
(Ill. 1982). (DB Def. Mem. 8-9; OPD Def. Mem. 9-11.) "The economic loss doctrine bars recovery
in tort for purely economic losses arising out of a failure to perform **contractual** obligations."
*Prmconnect, Inc. v. Drumm*, No. 15-cv-417, 2016 WL 3014814, at *5 (N.D. Ill. May 26, 2016)
(quotation omitted, emphasis added). The purpose of the economic loss doctrine is to prevent
disgruntled buyers from recovering more than what they would have in a breach of contract action.
*Id.* As a result, the economic loss doctrine "does not apply when a duty arises that is
extracontractual." *Country Mut. Inc. Co. v. Carr*, 852 N.E.2d 907, 915, 366 Ill. App. 3d 758, 768
(Ill. App. Ct. 2006) *vacated on other grounds by In re Country Mut. Ins. Co.*, 889 N.E.2d 209 (Ill.
2007).[6]

Defendants' duty to exercise reasonable care in assessing, representing, and charging the
correct amount of sales tax on its product is extracontractual. (Compl. ¶79.) Plaintiff and class
members contracted with Defendants for the *sale of coffee products*. There was **no** contract for the

---

    [6] *See also Prmconnect*, 2016 WL 3014814, at *5 ("Where a duty arises outside of the
contract, the economic loss doctrine does not prohibit recovery in tort for the negligent breach of
that duty") (quoting *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 636
N.E.2d 503, 514, 159 Ill. 2d 137, 162 (Ill. 1994)); *Nixon v. U.S.*, 916 F. Supp. 2d 855, 862 (N.D.
Ill. 2013) ("because the plaintiffs have no contract remedy, and because the [defendant's] actions
here are not the type that are normally subject to contract, the economic loss doctrine does not
apply"); *Selective Ins. Co. of the Se. v. Homeworks Cent., Inc.*, No. 4:12-cv-4017-SLD-JAG, 2013
WL 1286982, at *6 (C.D. Ill. Mar. 26, 2013) ("when a party has an independent duty to prevent
the alleged harm, then the negligent misrepresentation exception to the *Moorman* doctrine can
apply").

proper assessment, representation, or charge of *sales tax*. Defendants' assertion that "Plaintiff seeks to recover its [sic] disappointed commercial expectations" fundamentally misunderstands the basis of this lawsuit. (OPD Def. Mem. 10.) Any commercial expectations here related only to the sale of coffee products, ***not*** the proper charging of Illinois sales tax. *See Ill. Bell. Tel. Co. v. Plote, Inc.*, 778 N.E.2d 1203, 1208, 334 Ill. App. 3d 796, 802 (Ill. App. Ct. 2002) ("The economic loss doctrine seeks to protect the integrity of *contract* law and to force plaintiffs whose damages . . . equal their *commercial expectations* to sue on their bargained-for agreement") (emphasis added). Plaintiff does ***not*** claim that he and class members overpaid for bags of coffee beans, as Defendants maintain. (OPD Def. Mem. 10.) Plaintiff claims that he and class members overpaid ***sales tax***—a critical distinction that is fatal to Defendants' argument, as there was no bargained-for agreement regarding the proper representation and charge of sales tax. *See Ill. Bell Tel. Co.*, 778 N.E.2d at 1208, 334 Ill. App. 3d at 802.

Defendants argue that their overcharging of sales tax is merely providing information ancillary to the sale of a tangible product. (OPD. Def. Mem. 10; DB Def. Mem. 9.) This is a red herring. Plaintiff challenges the representations and charges associated with the sales tax—***not*** those relating to the price of the coffee beans. *See Ill. Bell Tel. Co.*, 778 N.E.2d at 1208, 334 Ill. App. 3d at 801-02 ("it is the nature of the *transaction at issue* in the specific case on an *ad hoc* basis that is determinative[,]" not defendant's "general business"). Accordingly, Defendants' reliance on *2314 Lincoln Park West*, *Anderson*, and *Tolan* is misplaced. (OPD Def. Mem. 10; DB Def. Mem. 9.) The plaintiffs in those cases were seeking recovery for defects in the tangible product itself, which fell within the ambit of contract law. *2314 Lincoln Park West Condo. Assoc. v. Mann, Gin, Ebel & Frazier, Ltd.*, 555 N.E.2d 346, 352-53, 136 Ill. 2d 302, 316-17 (Ill. 1990) (plaintiff sued architect for construction defects where "[t]he architect's responsibility originated

- 17 -

in its contract"); *Anderson Elec. v. Ledbetter Erection Corp.*, 503 N.E.2d 246, 247, 115 Ill. 2d 146, 148 (Ill. 1986) (plaintiff sued defendant for negligently failing to follow the defendant's manual where a contract between the parties provided that defendant's work "was to be performed in accordance with the manual"); *Tolan and Son, Inc. v. KLLM Architects, Inc.*, 719 N.E.2d 288, 298-99, 308 Ill. App. 3d 18, 30-31 (Ill. App. Ct. 1999) (plaintiff sued defendant for defect in townhome defendant was retained to design and construct). Plaintiff does not contend that the coffee beans are defective. Nor does Plaintiff seek recovery of inadequate value, costs of repair or replacement, or consequential loss of profits. Plaintiff seeks to recover for overpayment of sales tax. (Compl. ¶86.)

Further, the *Moorman* doctrine does not bar claims where, as here, defendants' extracontractual duty arises via statute. *Selective Ins. Co.*, 2013 WL 1286982, at *6 (holding a "statutorily imposed duty of care [ ] takes this case outside of the *Moorman* doctrine"); *Nixon*, 918 F. Supp. 2d at 862 (holding the defendant's duty arose from federal statute, "rendering the economic loss doctrine inapplicable"); *Golf v. Henderson*, 876 N.E.2d 105, 112, 376 Ill. App. 3d 271, 278-79 (Ill. App. Ct. 2007) (holding *Moorman* did not apply to ICFA claim where defendant failed to fulfill obligations that were created by statute); *Country Mut. Ins. Co.*, 852 N.E.2d at 916, 366 Ill. App. 3d at 768 ("Because [defendant] owed [plaintiff] an extracontractual duty, as legislated in section 2-2201(a), the *Moorman* doctrine does not bar [plaintiff's] tort-based claim"); *Ill. Bell Tel. Co.*, 778 N.E.2d at 1208, 334 Ill. App. 3d at 802 (holding the *Moorman* doctrine did not apply where the nature of defendant's duty was "wholly created and defined by statute").

Defendants' duty here is created by statute. Defendant is bound by Illinois statutes to impose the 1% tax rate on food that is to be consumed off the premises where it is sold. 35 ILL. COMP. STAT. 105/3-10; 35 ILL. COMP. STAT. 120/2-10. Defendants' duty to exercise reasonable

care in assessing, representing and charging the correct amount of tax on its products arises from these statutes. The *Moorman* doctrine does not apply here.

### B. Plaintiff sets forth the duty element of a negligent misrepresentation claim.

Dunkin' also challenges Plaintiff's negligent misrepresentation claim by arguing that Plaintiff has failed to allege a duty because Plaintiff has only alleged pecuniary loss and no physical injury or property damage. (DB Def. Mem. 9-10.) But that is just another way of arguing that the *Moorman* doctrine should apply. *See, e.g.*, *Selective Ins. Co.*, 2013 WL 1286982, at *5 (noting that "the Illinois Supreme Court explained that the *Moorman* doctrine attempts to define the concept of duty") (quotation omitted). The *Selective Ins. Co.* court described how "the question of whether [defendant] is 'in the business of supplying information' is a roundabout way of asking whether [defendant] owed [plaintiff] a duty in tort to communicate accurate information." *Id.* at *6. As noted above, the *Moorman* doctrine does not apply here because the duty owed to Plaintiff is extracontractual (Plaintiff is not complaining about the coffee itself) and Orland is required by Illinois statute to assess, collect and remit the tax at issue. As a result, *Hoover v. Country Mut. Ins. Co.*, 975 N.E.2d 638, 2012 IL App (1st) 110939 (Ill. App. Ct. 2012), which involved a contractual obligation concerning a home insurance policy and no statutory duty, does not apply.

### <u>Conclusion</u>

Illinois law is clear that food to be consumed off the premises is to be taxed at the low 1% state rate, rather than the high 6.25% state rate. Coffee grounds and beans by their very nature can only be consumed off the premises. Orland is charging tax at the high rate. That violates the ICFA. Meanwhile, other Dunkin' stores are also charging tax at the high rate, while Dunkin's competitors are charging tax at the low rate. At this stage, one logical inference—and perhaps the only logical inference—is that the Dunkin' franchisor is the reason while all its franchisees charge the high

rate. Plaintiff adequately alleges claims that, if proven, would provide him with relief against both Orland and Dunkin'. Plaintiff respectfully requests that the Court deny both motions.

Dated: June 21, 2016                                    Respectfully submitted,


                                                        By:  /s/ Todd L. McLawhorn

                                                        Joseph J. Siprut
                                                        *jsiprut@siprut.com*
                                                        Todd L. McLawhorn
                                                        *tmclawhorn@siprut.com*
                                                        Richard S. Wilson
                                                        *rwilson@siprut.com*
                                                        SIPRUT PC
                                                        17 North State Street
                                                        Suite 1600
                                                        Chicago, Illinois 60602
                                                        Phone: 312.236.0000
                                                        Fax: 312.878.1342

                                                        *Counsel for Plaintiff and*
                                                        *the Proposed Putative Class*

**CERTIFICATE OF SERVICE**

I, Todd L. McLawhorn, an attorney, hereby certify that the foregoing PLAINTIFF'S COMBINED OPPOSITION TO DEFENDANTS ORLAND PARK DONUTS, INC.'S AND DUNKIN' BRANDS GROUP, INC.'S RESPECTIVE MOTIONS TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT was served on all counsel of record via the Northern District of Illinois ECF filing system on June 21, 2016.


*/s/ Todd L. McLawhorn*

Todd L. McLawhorn


4832-7550-4690, v. 1